

**FILED & ENTERED**

**DEC 29 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Sehee Bang, Debtor.<br><br>Hyun Woo Na,<br>                                    Plaintiff,<br>    v.<br>Sehee Bang,<br>                                    Defendant. | Case No.: 2:21-bk-12190-ER<br>Adv. No.: 2:21-ap-01098-ER<br><br>**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

## I. Introduction

Before the Court is the *Motion for Default Judgment Under LBR 7055-1* [Adv. Doc. No. 44] (the "Motion") filed by Hyun Woo Na ("Plaintiff"). For the reasons set forth below, the Court finds that Plaintiff is entitled to the entry of default judgment against Sehee Bang ("Defendant"). However, Plaintiff has failed to carry his burden with respect to his request for damages in the amount of $1,524,198.72. Having reviewed the Motion and the evidence submitted in support thereof, the Court finds that Plaintiff is entitled to damages of only $192,500. The Court will enter judgment finding that Defendant is indebted to Plaintiff in the amount of $192,500, and that such indebtedness is excepted from Defendant's discharge pursuant to § 523(a)(2)(A) and § 523(a)(4) (on the ground of embezzlement).

Because Plaintiff has failed to establish that he is entitled to judgment on his § 523(a)(2)(B) claim, his § 523(a)(4) larceny claim, his § 523(a)(4) fraud or defalcation claim, and his claims under § 727(a)(2), (3), and (4), the Court will dismiss these claims on its own motion. *See Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (authorizing the dismissal of claims *sua sponte* where the Plaintiff cannot win relief).

//
//
//

## II. Findings and Conclusions
### A. Facts Established by the Entry of Default

The Court has stricken Defendant's Answer and entered Defendant's default as a sanction for Defendant's failure to fulfill her discovery obligations.[1] As a result, the well-pleaded allegations of the Complaint, except for the allegations pertaining to damages, have now been established as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). The following facts have now been established by the Complaint:

1) In June 2016, Plaintiff and Defendant entered into a business partnership to own and operate Maisoli, Inc. ("Maisoli"), an apparel manufacturer. The parties agreed that they would each receive 50% of any net profits generated by Maisoli. They further agreed that Defendant would manage Maisoli's day-to-day business operations and supervise its employees.
2) Between June 2016 and February 2019, Plaintiff invested $192,500 in Maisoli.
3) In March 2019, Defendant falsely represented to Plaintiff that Maisoli had not generated any profits during the preceding three years. Under the mistaken impression that Maisoli was not profitable, Plaintiff agreed to sell his interest in the business to Defendant in exchange for the return of Plaintiff's $192,500 investment. The parties agreed that the $192,500 would be paid over a period of three years, with payments to commence once Maisoli became profitable. They also agreed that to the extent Maisoli was not profitable, Defendant was required to provide proof of Maisoli's unprofitability to Plaintiff. The agreement terminating the partnership and requiring Defendant to repay Plaintiff his $192,500 investment was made on April 8, 2019.
4) In September 2019, upon Plaintiff's demand, Defendant provided Plaintiff financial information regarding Maisoli. The information showed that under Defendant's direction, Maisoli had used Ari Apparel, Inc. ("Ari") as a subcontractor. Ari is wholly-owned by Defendant. Defendant caused Maisoli to overpay Ari for its subcontracting services, thereby artificially reducing Maisoli's profits. Defendant also caused Maisoli to pay business expenses, such as costs for meals, entertainment, and insurance, that should have been borne by Ari. The improper payments that Defendant caused Maisoli to make to Ari created the false impression that Maisoli was not profitable; had Maisoli's funds not been improperly diverted to Ari, Maisoli would have generated substantial profits during the period that Defendant invested in the company.

### B. Plaintiff is Entitled to Default Judgment on His Claim for Relief Under § 523(a)(2)(A)

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except debts from discharge, a creditor has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

---

[1] *See* Adv. Doc. No. 42 (order striking Defendant's Answer and entering Defendant's default) and Adv. Doc. No. 41 (ruling explaining the reasons for the sanction).

To prevail on a § 523(a)(2)(A) claim on the grounds of false pretenses or false representation, a creditor must prove that:

1) the debtor made the representations;
2) that at the time he knew they were false;
3) that he made them with the intention and purpose of deceiving the creditor;
4) that the creditor relied on such representations; and
5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

Plaintiff has satisfied all the elements of § 523(a)(2)(A). At the time Plaintiff agreed to invest in Maisoli, Defendant represented to Plaintiff that Plaintiff would receive 50% of the profits generated by Maisoli. Defendant's representation was false, as evidenced by the fact that at the time Defendant made the representation, she intended to prevent Plaintiff from receiving his share of the profits by diverting a substantial portion of Maisoli's income to Ari. The representation was made for the purpose of deceiving Plaintiff, in furtherance of Defendant's scheme to induce Plaintiff to invest in Maisoli but then fail to pay Plaintiff any return on his investment. The fraudulent nature of Defendant's representation is established by the fact that Defendant caused Maisoli to make excessive and improper payments for the benefit of Defendant's wholly-owned business Ari. *See McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (B.A.P. 9th Cir. 1998) (internal citations omitted) ("'Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct.' Therefore, in determining whether the debtor had no intention to perform, a court may look to all the surrounding facts and circumstances."). Defendant's false representation caused Plaintiff to lose his investment in Maisoli, as Plaintiff would not have invested in Maisoli had he known that he would not be paid the return he was owed on his investment.

**B. Plaintiff is Not Entitled to Default Judgment on His Claim for Relief Under § 523(a)(2)(B)**

Section 523(a)(2)(B) excepts from discharge indebtedness obtained through use of a statement in writing:

1) that is materially false;
2) respecting the debtor's or an insider's financial condition;
3) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
4) that the debtor caused to be made or published with intent to deceive ….

§ 523(a)(2)(B).
//
//
//
//

To prevail upon a claim under § 523(a)(2)(B), a creditor must satisfy, by a preponderance of the evidence, the following requirements:

1) a representation of fact by the debtor,
2) that was material,
3) that the debtor knew at the time to be false,
4) that the debtor made with the intention of deceiving the creditor,
5) upon which the creditor relied,
6) that the creditor's reliance was reasonable,
7) that damage proximately resulted from the representation.

*In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996), as amended (Oct. 2, 1996).

The requirements are similar to those imposed by § 523(a)(2)(A), except that the creditor must make a heightened showing in two respects: (1) the representation at issue must be *materially* false (as opposed to simply false), and (2) the creditor's reliance must be *reasonable* (as opposed to justifiable).

A statement is "materially false if it includes information which is 'substantially inaccurate' and is of the type that would affect the creditor's decision making process. To except a debt from discharge, the creditor must show not only that the statements are inaccurate, but also that they contain important and substantial untruths." *Candland*, 90 F.3d at 1470.

The Complaint does *not* allege that Defendant induced Plaintiff to invest in Maisoli by presenting false written statements to Plaintiff with respect to Defendant's financial condition. Because the Complaint's allegations fail to satisfy all the elements of § 523(a)(2)(B), Plaintiff is not entitled to entry of default judgment on his claim for relief under § 523(a)(2)(B).

**C. Plaintiff is Entitled to Default Judgment on His Claim for Relief Under § 523(a)(4) on the Ground of Embezzlement, but is Not Entitled to Default Judgment Under § 523(a)(4) on the Ground of Fraud or Defalcation or the Ground of Larceny**

Section 523(a)(4) excepts from discharge debts incurred "for … embezzlement." For purposes of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *First Delaware Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997). "In the context of non-dischargeability, embezzlement requires three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud." *Id.*

Plaintiff is entitled to default judgment on his § 523(a)(4) embezzlement claim. Pursuant to the parties' agreement, Defendant was rightfully in possession of Plaintiff's investment in Maisoli. Defendant misappropriated the funds Plaintiff had invested by failing to pay Plaintiff the profits he was owed on account of his investment. The circumstances surrounding Defendant's failure to pay Plaintiff his share of the profits indicate fraud—for example, Defendant caused Maisoli's profits to be artificially reduced by causing Maisoli to overpay for services provided by another company wholly-owned by Defendant.

Plaintiff also seeks default judgment against Defendant under § 523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity." Plaintiff is not entitled to default judgment for fraud or defalcation because he has not established that Defendant was acting in a fiduciary capacity when she committed the fraud or defalcation. "To prevail on a non-dischargeability

claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011).

Federal bankruptcy law determines whether a fiduciary relationship exists within the meaning of §523(a)(4). *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). For purposes of §523(a)(4), the fiduciary relationship "must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996). "Because the broad general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable in the dischargeability context, ordinary commercial relationships are excluded from the reach of section 523(a)(4)." *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987).

Here, the agreement between Plaintiff and Defendant to invest in Maisoli was an ordinary commercial relationship. Plaintiff has not shown the existence of an express or technical trust predating that agreement. Therefore, Defendant was not acting in a fiduciary capacity for purposes of § 523(a)(4) when she failed to pay Plaintiff his share of Maisoli's profits. Plaintiff is not entitled to default judgment against Defendant under § 523(a)(4) on the ground of fraud or defalcation.

Finally, Plaintiff seeks default judgment against Defendant under § 523(a)(4) on the ground of larceny. Within the context of §523(a)(4), "larceny" means the "'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010). "As distinguished from embezzlement, the original taking of the property must be unlawful." *Collier on Bankruptcy* ¶ 523.10[2] (16th ed. rev'd 2022). Parties who are in lawful possession of property but then unlawfully misappropriate the property have not committed larceny within the meaning of §523(a)(4). Plaintiff's § 523(a)(4) larceny claim fails because he has not established that Defendant's initial possession of Plaintiff's investment was unlawful. Quite the opposite—as set forth in the Complaint, Defendant was in possession of the invested funds pursuant to an agreement between the parties.

## D. Plaintiff is Not Entitled to Default Judgment on His Claim for Relief Under § 727(a)(2)

Section 727(a)(2) provides that a debtor is not entitled to a discharge if:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> A) property of the debtor, within one year before the date of the filing of the petition; or
> B) property of the estate, after the date of the filing of the petition ….

§ 727(a)(2).

Defendant filed a voluntary Chapter 7 petition on March 19, 2021. Plaintiff invested a total of $192,500 in Maisoli between June 2016 and February 2019. As discussed in Section II.H., below, Plaintiff has established that he is entitled to damages of $192,500 (the amount of his investment), but has failed to establish that he is entitled to damages of $1,331,698.72 on account

of unpaid profits on the $192,500 investment. Plaintiff made the $192,500 investment more than one year before the filing of the petition, meaning that any fraud committed by Defendant in connection with that investment would fall outside the timeframe that would be actionable under § 727(a)(2). Any wrongful conducted committed by Defendant with respect to the $1,331,698.72 in allegedly wrongfully-retained profits is not actionable under § 727(a)(2) because, as set forth in Section II.H., Plaintiff has failed to introduce sufficient evidence showing his entitlement to damages on account of unpaid profits. For these reasons, Plaintiff is not entitled to default judgment on his § 727(a)(2) claim.

**E. Plaintiff is Not Entitled to Default Judgment on His Claim for Relief Under § 727(a)(3)**

Section 727(a)(3) provides that a debtor is not entitled to a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

§ 727(a)(3).

Section 727(a)(3) prevents a debtor from receiving a discharge where the debtor has concealed or destroyed business records that would enable the Chapter 7 Trustee or creditors "to ascertain [the Debtor's] financial position or to follow [the Debtor's] business transactions with any assurance of accuracy." *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1402 (9th Cir. 1990). For example, in *Cox*, the court upheld the denial of discharge of a debtor who had failed to keep any financial records for real estate and a major corporation in which the debtor held an interest. *Id.*

The Complaint neither alleges that Defendant failed to keep business records pertaining to Maisoli or destroyed any of Maisoli's business records. To the contrary, the Complaint alleges that Defendant provided Plaintiff with Maisoli's bank statements in September 2019. Further, in support of the Motion, Plaintiff submits summary reports of Maisoli's income and expenses for the period between July 2017 and February 2020, which Plaintiff prepared based upon Maisoli's bank statements. Plaintiff is not entitled to default judgment on his § 727(a)(3) claim.

**G. Plaintiff is Not Entitled to Default Judgment on His Claim for Relief Under § 727(a)(4)**

Section 727(a)(4) provides that a debtor is not entitled to a discharge if:

> the debtor knowingly and fraudulently, in or in connection with the case—
> A) made a false oath or account;
> B) presented or used a false claim;
> C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs ….

§ 727(a)(4).

The allegations established by the Complaint do not support the entry of default judgment against Defendant under § 727(a)(4). With respect to § 727(a)(4)(A), all of the false statements made by Defendant to Plaintiff occurred prior to the filing of the petition. Because these false statements were not made "in or in connection with" the bankruptcy case, Plaintiff is not entitled to default judgment under § 727(a)(4)(A).

With respect to § 727(a)(4)(B), none of the Complaint's allegations pertain to a false claim presented by Defendant in connection with the bankruptcy case. Therefore, Plaintiff is not entitled to the entry of default judgment under this provision.

With respect to § 727(a)(4)(C), there are no allegations in the Complaint that Defendant engaged in, or attempted to engaged in, any bribery or extortion with respect to the bankruptcy case. Plaintiff is not entitled to the entry of default judgment under this provision.

With respect to § 727(a)(4)(D), there are no allegations in the Complaint that Defendant withheld records or information from the Chapter 7 Trustee or other officers of the estate. Plaintiff is not entitled to the entry of default judgment under this provision.

### H. Plaintiff is Entitled to Damages in the Amount of $192,500

Plaintiff seeks damages against Defendant in the amount of $1,524,198.72. As discussed above, the entry of Defendant's default does not establish the truthfulness of Plaintiff's allegations with respect to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Plaintiff bears the burden of establishing that he is entitled to the damages that he seeks.

The damages sought by Plaintiff fall into two categories: (1) the amount that he invested in Maisoli ($192,500) and (2) the profits Plaintiff alleges that he would have received had Defendant not diverted funds from Maisoli by causing it to overpay for services provided by other companies wholly-owned by Defendant ($1,331,698.72). According to Plaintiff, the $1,331,698.72 in allegedly-diverted profits consists of (1) $472,644.77 in alleged overpayments made to Ari prior to the April 8, 2019 termination of the partnership; (2) $707,122.40 in alleged overpayments made to Ari subsequent to the April 8, 2019 termination of the partnership; (3) $81,633.66 allegedly used to improperly pay Ari's employees between September 2017 and March 2019; (4) $34,490.45 allegedly used to improperly pay Ari's employees between April 2019 and December 2019; (5) $23,530.48 allegedly used to pay Defendant's personal expenses between July 2017 and March 2019; and (6) $12,276.96 allegedly used to pay Defendant's personal expenses between April 2019 and February 2020.

Plaintiff has personal knowledge of the amount he invested in Maisoli, and therefore is qualified to testify with respect to the loss of his $192,500 investment. However, as explained below, Plaintiff has failed to supply admissible evidence supporting his contention that he is entitled to damages of $1,331,698.72 for unpaid profits on that investment.

As evidence of the profits that were allegedly diverted from Maisoli, Plaintiff relies upon income statements for Maisoli (the "Income Statements") which he prepared using Maisoli's bank statements. Plaintiff has *not* submitted the underlying bank statements into evidence. The Income Statements prepared by Plaintiff contain line items setting forth the amounts allegedly overpaid to Ari. With respect to the Income Statement for the period between July 2017 and July
//
//

2019, Plaintiff testifies that he calculated these alleged overpayments using the following methodology:

> In the industry Maisoli was operating in, the expenses toward sewing companies like Ari would be about 20–25% of the fabric cost. The total purchase made for fabric is $770,776.11 during this time. On a generous side, 25% of the purchase amount would be $192,694.03, which is the most amount Ari should have been paid. But [Defendant] overpaid Ari, her other business at [least] $665,338.80.

Declaration of Hyun Woo Na [Doc. No. 44-1] at ¶ 30(B) (the "Na Decl.").

Plaintiff relies upon the same reasoning to support his claim that Defendant caused Maisoli to overpay Ari at least $804,554 between April 2019 and February 2020. *Id.*

Plaintiff's testimony regarding the amounts that Maisoli should have paid to Ari for its subcontracting services constitutes expert testimony regarding the costs of operating an apparel business. But nothing in Plaintiff's declaration establishes that he is qualified to provide such expert testimony. A witness may not offer expert testimony unless that witness establishes that he "is qualified as an expert by knowledge, skill, experience, training, or education." Federal Rule of Evidence ("FRE") 702. Plaintiff's declaration does not contain any indication suggesting that he is an expert in operating an apparel business. For example, Plaintiff does not testify that he has experience operating an apparel business or that he has experience investing in such businesses. Because Plaintiff has failed to demonstrate that he is an expert with respect to the apparel industry, his testimony regarding the amount that Maisoli should have paid for Ari's services is inadmissible.

Plaintiff also testifies that Defendant caused Maisoli to improperly make payments to Ari's employees. Plaintiff supports this testimony with a spreadsheet that Plaintiff prepared using Maisoli's bank statements. As noted, none of the bank statements upon which Plaintiff relied in preparing the spreadsheet have been introduced into evidence.

The testimony that Defendant allegedly caused Maisoli to improperly pay the employees of a related business also qualifies as expert testimony regarding the operation of an apparel business that is inadmissible. Plaintiff has failed to establish that he is qualified to opine as to the number of employees who are required to operate an apparel business such as Maisoli.

Finally, Plaintiff testifies that Defendant improperly diverted funds from Maisoli to pay her personal expenses. Plaintiff attaches summaries of these allegedly improper payments which he testifies were prepared from his review of Maisoli's bank statements, but again Plaintiff fails to attach the underlying bank statements. Because Plaintiff has failed to provide the underlying bank statements, this testimony must be excluded as hearsay.

In sum, Plaintiff has not carried his burden with respect to his claim for damages of $1,331,698.72 on account of unpaid profits. Plaintiff has established only that he is entitled to damages of $192,500, representing the amount of Plaintiff's investment.

## III. Conclusion

Based upon the foregoing, the Court finds that Defendant is indebted to Plaintiff in the amount of $192,500, and that such indebtedness is excepted from Defendant's discharge pursuant to § 523(a)(2)(A) and § 523(a)(4) on the ground of embezzlement. Because Plaintiff has failed to establish that he is entitled to judgment on his § 523(a)(2)(B) claim, his § 523(a)(4) larceny claim, his § 523(a)(4) fraud or defalcation claim, and his claims under § 727(a)(2), (3),

and (4), the Court will dismiss those claims on its own motion. Because the judgment has been rendered by a federal court, it will bear interest at the federal rate, not the 10% state law rate. The Court will enter default judgment consistent with this Memorandum of Decision.

###

Date: December 29, 2022

Ernest M. Robles
United States Bankruptcy Judge